**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA**          :

           **v.**          :          **CRIMINAL NO. 21-173-1**

**CUSHMIR McBRIDE**          :

## GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR AN UPWARD VARIANCE

The United States of America, by its undersigned attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, Robert E. Eckert, Assistant United States Attorney for the district respectfully requests that this Court sentence the defendant, Cushmir McBride, to a term of 120 months' imprisonment to be followed by three years of supervised release.

## I.    INTRODUCTION

On April 5, 2021, the defendant was arrested based on an arrest warrant approved in the Eastern District of Pennsylvania charging him with violating Title 18, United States Code, § 844(n), conspiracy to maliciously damage property used in interstate commerce by means of an explosive.   On April 22, 2021, a grand jury sitting in the Eastern District of Pennsylvania returned an Indictment charging the defendant, Cushmir McBride, Kamar Thompson, and Nasser McFall with one count of conspiracy to maliciously damage property used in interstate commerce by means of an explosive and four counts of maliciously damaging property used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(i).   On January 20, 2022, a Superseding Indictment was returned that charged the defendant with one count of conspiracy to maliciously damage property used in interstate commerce by means of an

explosive, in violation of 18 U.S.C. § 844(n), and six counts of maliciously damaging property used in interstate commerce by means of an explosive, in violation of 18 U.S.C. § 844(i).   On May 19, 2023, this Court dismissed Count Five of the Superseding Indictment which charged a substantive count in the District of Delaware for lack of venue.   ECF 106.   In the same order, this Court denied the defendant's motion to dismiss overt acts in the conspiracy count, (Count One), that occurred in the District of Delaware, which included, among other things, the basis for Count Five, the detonation of an explosive device inside of an operating Wawa in Claymont, Delaware, on November 5, 2020.   ECF 39, 105, and 106.

On September 5, 2023, this Court listed this matter for trial to begin on January 16, 2024. ECF 112.   After both parties filed trial documents, this Court held a final pre-trial conference on January 12, 2024.   ECF 141.   Then, on the morning scheduled for jury selection, the defendant pled guilty to the Superseding Indictment, with the exception of Count Five, in accordance with a guilty plea agreement.   ECF 143.   The plea agreement was made pursuant to Rule 11(c)(1)(B) and provided that the parties agreed to a joint recommendation of a term of imprisonment in the Court's discretion between 60 and 120 months, a three-year term of supervised release, and a $600 special assessment.   ECF 144.   Full restitution of $417,463 also shall be ordered.   A sentencing hearing is currently scheduled for July 10, 2024, at 9:00 a.m., before the Honorable Joshua D. Wolson.

## II.    <u>SENTENCING PROCEDURE</u>

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in <u>United States v. Booker</u>, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before <u>Booker</u>.

(2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-<u>Booker</u> case law, which continues to have advisory force.

(3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

<u>United States v. Gunter</u>, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing <u>United States v. King</u>, 454 F.3d 187, 194, 196 (3d Cir. 2006); <u>United States v. Cooper</u>, 437 F.3d 324, 329-30 (3d Cir. 2006)).

For the reasons set forth below, the government requests that this Court impose a sentence of 120 months' imprisonment.

## III.    MAXIMUM AND MANDATORY MINIMUM PENALTIES

On each count, the defendant faces a maximum sentence of 20 years' imprisonment, with a mandatory minimum five-years' imprisonment, a three-year period of supervised release, a $250,000 fine, and a $100 special assessment, per count of conviction.   The defendant faces a total maximum penalty of 120 years' imprisonment, a mandatory minimum of five years' imprisonment, a three-year period of supervised release, a $1,500,000 fine, and an $600 special assessment.   Full restitution of as much as $417,463 also shall be ordered.

## IV.    SENTENCING GUIDELINES CALCULATIONS

The government agrees with the sentencing guideline calculations of the Probation Department, as reflected in the Presentence Report (PSR).   These calculations established that defendant McBride has a Total Offense Level of 29, and a Criminal History Category of II, resulting in an advisory guideline range of 87 to 108 months' imprisonment.   PSR ¶ 151.

3

## V.    <u>ANALYSIS OF THE 3553(a) FACTORS</u>

The government seeks a sentence of 120 months' imprisonment, a modest upward variance from the guideline range.   The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark."   <u>Gall v. United States</u>, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

Here, the government submits that a modest upward variance from the guidelines is appropriate due to the unique factual circumstances of this case that are not fully accounted for within the standard guideline calculation. As the Court is aware, the guidelines ordinarily provide for two separate enhancements that would apply in this case if the robbery guidelines were used.   *See* USSG §§ 2B3.1(b)(1) and (b)(7).   However, because this case is an arson, and therefore the arson guidelines are used, there is no increase for the object of the robbery being a financial institution or for the loss amount.   The defendant and his co-conspirators obtained approximately $417,000 in this case and obtained that money from financial institutions.   As those two facts are not addressed by the guidelines, the government submits that a 12-month upward variance is justified by the facts of this case.   In addition, when the defendant was arrested, a loaded .40 caliber Glock pistol with an obliterated serial number was recovered from his vehicle, a fact that was also unaccounted for in the guidelines and is indictive of his dangerousness at the time of his arrest and demonstrative of the need for specific deterrence in this case.   Therefore, defendant McBride presents as a defendant who's actual conduct is not fully reflected in a base guideline calculation as he committed a theft of over $400,000, from a

financial institution, and possessed a firearm, all of which are unaccounted for facts of this case that typically would be included in the USSG analysis.   As a result, a modest upward variance, to the top of the recommended sentencing range, that being 120 months' incarceration, is appropriate.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a).   Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.   18 U.S.C. § 3553(a).[1]

---

[1]   Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection."   The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'"   United States v. Dragon, 471 F.3d 501, 506 (3d Cir. 2006) (quoting United States v. Navedo-Concepcion, 450 F.3d 54, 58 (1st Cir. 2006)).

1.    <u>Nature and Circumstances of the Offense</u>[2]

Between October 28, 2020, and at least March 2, 2021, defendant McBride, along with Nasser McFall, Kamar Thompson, and others, conspired and agreed to maliciously damage and destroy, and attempt to damage and destroy, by means of fire or an explosive, ATMs used in interstate commerce.   Specifically, on multiple occasions, defendant McBride, in concert with Thompson and McFall detonated explosive devices on ATMs located in Philadelphia and Delaware in order to access and steal the cash inside.

Defendant McBride, along with Nasser McFall and Kamar Thompson drove in vehicles to locations with ATMs, for the purpose of detonating explosives to destroy the ATMs, and to steal the United States currency contained inside the ATMs.   Defendant McBride, Nasser McFall, and Kamar Thompson used tools, including but not limited to, hammers, axes, saws, crowbars, and other equipment, and wore construction clothing to facilitate and carry out their plan to destroy ATMs with explosive devices and to steal the United States currency contained inside the ATMs.   Defendant McBride, Kamar Thompson and Nasser McFall entered or broke

---

[2] In order to provide this Court with a complete picture of the crimes the defendant committed, the Government plans to present several exhibits during the sentencing hearing in this case. Exhibit G-1 is a video compilation of the ATM explosion at the Target located at 2701 Castor Ave. in Philadelphia on October 28, 2020. Exhibit G-2 is a video compilation of the ATM explosion at the Wawa located at 3230 Richmond St. in Philadelphia on October 29, 2020. Exhibit G-3 is a video compilation of the ATM explosion at the Wawa located at 7001 Roosevelt Blvd. in Philadelphia on October 31, 2020. Exhibit G-4 is a video compilation of the ATM explosion at the Wawa located at 301 Ridge Rd. in Claymont, DE on November 5, 2020. Further, the Government anticipates presenting exhibits G-5 and G-6, which show shrapnel lodged in the ceiling of this Wawa as the result of this explosion. Exhibit G-7 is a video compilation of the ATM explosion at 4600 Roosevelt Blvd. in Philadelphia on December 2, 2020. Exhibit G-8 is a video compilation of the ATM explosion at the Wells Fargo bank located at 7782 Crittenden St. in Philadelphia on March 2, 2021.

into businesses to gain access to ATMs inside and used explosives to destroy the ATMs and to steal the United States currency contained inside the ATMs.   Finally, defendant McBride, along with Kamar Thompson and Nasser McFall, covered their faces with masks and wore other items of clothing to conceal their identities and to evade capture by law enforcement.

On October 28, 2020, defendant McBride, Kamar Thompson, and Nasser McFall drove together in a vehicle to the Target located at 2701 Castor Avenue, Philadelphia, Pennsylvania (hereinafter referred to as "the Castor Avenue Target").   After arriving at the Castor Avenue Target, Kamar Thompson and Cushmir McBride, wearing masks to conceal their identities, entered the store carrying tools, and defendant McFall remained in the vehicle as the lookout and getaway driver.   After entering the Castor Avenue Target, Cushmir McBride retrieved a safety jacket from the floor of the Target and put it on.   Kamar Thompson and Cushmir McBride then used the tools to break open the ATM. Kamar Thompson placed an explosive device inside of the ATM and lit it.   The explosive device detonated, damaging the ATM, and allowing Kamar Thompson and McBride to gain access to the United States currency inside.   Kamar Thompson and Cushmir McBride stole approximately $39,628 from the ATM, left the store, and rejoined defendant McFall in the getaway vehicle.   Kamar Thompson, Cushmir McBride, and defendant McFall then fled the area in their vehicle.

On October 29, 2020, defendant McFall, Cushmir McBride, and Kamar Thompson drove together in a vehicle to the Wawa located 3230 Richmond Street, Philadelphia, Pennsylvania (hereinafter referred to as "the Richmond Street Wawa").   After arriving at the Richmond Street Wawa, Kamar Thompson and Cushmir McBride, wearing construction safety vests, and masks to conceal their identities, and carrying crowbars, unsuccessfully attempted to break into the

Richmond Street Wawa through a side door. Thompson and McBride then forcibly entered the store through the front door, while defendant McFall remained in the vehicle as the lookout and getaway driver.   While inside the Richmond Street Wawa, Kamar Thompson and Cushmir McBride used pry bars to open two PNC Bank ATMs.   After breaking open the ATMs with the tools, Cushmir McBride placed an explosive device inside of the ATM and lit it. The explosive device detonated, damaging the ATM, and allowing Thompson and McBride to gain access to the United States currency inside.   Thompson and McBride stole approximately $150,610 from the ATMs, placed the stolen money in a trash can from store, left the store, and joined McFall in the getaway vehicle.   Defendant McBride, McFall and Thompson fled the area in their vehicle and drove to a secure location near the Pennsylvania/Delaware border.

On October 31, 2020, defendant McBride and Kamar Thompson drove together in a vehicle to the Wawa located at 7001 Roosevelt Boulevard, Philadelphia, Pennsylvania. Defendant McBride and Kamar Thompson, wore masks to conceal their identities, and broke into the Roosevelt Boulevard Wawa by forcing open a door.   One of the men placed an explosive device inside the ATM and lit it.   The explosive device detonated, damaging the ATM, and allowed them to gain access to the interior of the ATM.   After finding no money inside the ATM, defendant McBride and Kamar Thompson fled the store, returned to their vehicle, and fled from the area.

On or about November 5, 2020, the defendant drove from Philadelphia to Claymont, Delaware, and met McFall.   Defendant McBride, Kamar Thompson, and Nasser McFall then drove together to the Wawa, located at 601 Naamans Road, Claymont, Delaware (hereinafter referred to as "the Naamans Road Wawa") in Thompson's vehicle, which had its vehicle

identification number covered and a stolen registration plate affixed to it, in order to conceal the identity of the true owner of the vehicle.    McFall drove Thompson's vehicle to the Naamans Road Wawa.    After arriving, McFall, defendant McBride and Kamar Thompson parked the vehicle and remained there for a brief time.    Defendant McBride, McFall and Thompson then drove out of the parking lot and left the area.    After leaving the Naamans Road Wawa, defendant McBride, McFall and Thompson drove together in Thompson's vehicle to the Wawa at 301 Ridge Road, Claymont, Delaware (hereinafter referred to as "the Ridge Road Wawa"). After arriving at the Ridge Road Wawa, Thompson and defendant McBride entered the store, which was open for business, while wearing construction safety vests, masks to conceal their identities, and armed with crowbars, as defendant McFall remained in the vehicle as the lookout and getaway driver.    After entering the Ridge Road Wawa, Thompson locked the door behind them, preventing the employees inside from leaving and preventing anyone from entering the store.    Thompson brandished the crowbar, corralled the store employees, forced them to sit on the floor, and demanded their cellular phones.    McBride approached the ATM, placed an explosive device into an ATM, and lit it.    The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside. Thompson and McBride then fled the store and rejoined defendant McFall in the getaway vehicle and fled the area.

On December 2, 2020, Thompson and defendant McBride, drove together in a vehicle to the Wells Fargo ATM, located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania. Defendant McFall drove in a separate vehicle to the Wells Fargo ATM, located at 4600 Roosevelt Boulevard, Philadelphia, Pennsylvania.    Thompson and defendant McBride wore

construction safety vests, and masks to conceal their identities.   Thompson and defendant McBride left the vehicle, set up orange traffic cones in the parking lot, and approached the ATM where Thompson and McBride placed an explosive device inside the ATM and lit it.   The explosive device detonated, damaging the ATM, but Thompson and McBride were unable to gain access to the United States currency inside.   They then placed a second explosive device inside of the ATM and lit it.   The explosive device detonated, causing further damage to the ATM, and allowing Thompson and the defendant to gain access to the United States currency inside.   As they stole money from the ATM, defendant McFall stayed in his vehicle, and acted as a lookout for any police or law enforcement activity.   Thompson and Cushmir McBride stole approximately $65,845 from the ATM and fled the area in their vehicle.   The defendant and Thompson later met defendant McFall to distribute the proceeds from the robbery of the Wells Fargo ATM on December 2, 2020.

On March 2, 2021, defendant McBride and two other unknown individuals were dropped off by a vehicle in the vicinity of Grassworks Landscaping located at 12 Kelly Street, Landsdowne, Pennsylvania.   The three individuals then stole a GMC Isuzu dump truck labeled "Grassworks Landscaping" and drove to 7782 Crittenden Street, Philadelphia, Pennsylvania. Defendant McBride and the other individuals wore construction clothing, and masks to conceal their identities.   Defendant McBride, and the other individuals, then used tools to break open the ATM.   Defendant McBride and the other individuals then placed an explosive device inside of the ATM and lit it.   The explosive device detonated, damaging the ATM, and allowing access to the United States currency inside.   Defendant McBride and the other individuals stole approximately $161,380 from the ATM and fled the area in their vehicle.   Defendant McBride

and the other individuals then fled the area in the GMC Isuzu dump truck bearing the labeled "Grassworks Landscaping."

    2.    <u>History and Characteristics of the Defendant</u>

        A.    <u>Criminal History</u>

The defendant has one scored juvenile adjudication and one scored criminal conviction which each receive one criminal history point.   The first involved a "physical altercation with a staff member" at the alternative school McBride attended where, according to the petition, he "grabb[ed] and push[ed] the victim."   PSR ¶ 87.   Then, one December 10, 2018, the defendant pled guilty to driving under the influence in Delaware County and received a sentence of six months' probation.   On December 13, 2019, he was found to be in violation of probation and sentenced to an additional six months of probation, which expired on June 15, 2020.   PSR ¶ 90. The defendant received one point for each event, for a total of two criminal history points, which places him in Category II.   PSR ¶ 93-94.

The defendant, in his sentencing memorandum, seeks a downward departure and/or variance based upon his criminal history.   The Court should deny that request as the defendant's argument *underrepresents* the nature of his criminal history, which involved violence towards a teacher and a violation of probation. The defendant in a short matter of time not only committed the crimes reflected in the PSR, but those crimes show an escalation in severity in a very short period of time – progressing from a simple assault, to a DUI, to a violation of probation, to his conduct here involving essentially, burglary, robbery, use of explosives, theft and possession of weapons.   McBride's criminal history category of II is entirely correct and proper and not in the least bit an overrepresentation.   As a result the Court should deny the defendant's request for a

departure.

   B. <u>Personal Background</u>

  The defendant was living at various hotels in Philadelphia at the time of his arrest but reported living in Philadelphia and Yeadon while he was growing up.   PSR ¶ 103.   It appears that he will reside with his mother in Upper Darby upon his release.   PSR ¶ 110, 115.   The defendant is in a long-term relationship with K.N., which has produced one child.   PSR ¶ 107, 111.

  The defendant, in his sentencing memorandum, seeks a downward departure and/or variance based upon his "youthful offender" status. The defendant points to an adopted amendment that has not yet been instituted into the USSG that may direct that age may be relevant at sentencing given that "youthful individuals generally are more impulsive, risk-seeking and susceptible to outside influence . . . ."   The Court should deny the request.   As an in initial matter the defendant is relying upon a not yet effective proposed amendment. Moreover, the proposed amendment simply makes clear that age *may* (not require) warrant a departure.   However, the proposed amendment makes clear that if such departure is potentially appropriate it is intended to be directed at impulsive, risk-seeking and outside influenced behavior.   Here, McBride did not commit an impulsive crime – he and his codefendants' conspired, for months, to commit coordinated and pre-planned crimes.   In addition, the crimes were committed to strategically take advantage of a volatile public safety moment in order to maximize their theft and evade capture.   McBride's conduct was not, in any regard impulsive and influenced by others.   It was highly coordinated and premeditated and as a result the defendant's motion should be denied.

3. Need for the Sentence Imposed to Reflect the Seriousness of the Offenses, to Promote Respect for the Law, and to Provide Just Punishment for the Offenses

McBride's actions in this case were gravely serious. During each explosive incident, McBride entered the business with his co-conspirators and they carried explosive devices to the location of each victim business and placed a bomb inside of the ATM in the hopes that it would be sufficiently damaged such that they could steal the money inside. In each incident, McBride either placed an explosive device into an ATM or stood next to his co-conspirator while he did so. Even when McBride and his co-conspirators encountered a business that was open and staffed by innocent employees, one of whom sought counseling and was out of work for a while due to this incident, McBride and his co-defendants did not hesitate to place a bomb inside of the ATM and detonate it, in an effort to access the cash inside. By sentencing the defendant to 120 months, while the defendant is incarcerated, society will be protected and he cannot harm any other person or steal from anyone else while he is incarcerated.

For the reasons set forth above, a sentence of 120 months' imprisonment is necessary in this case "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."

4. Need to Afford Adequate Deterrence to Criminal Conduct, and to Protect the Public from Further Crimes of the Defendant

The government's recommended sentence affords adequate deterrence to others who would commit similar offenses, and protects the public from any further crimes of the defendant for at least as long as he is incarcerated. 18 U.S.C. § 3553(a)(2). The defendant's actions in this case where he conspired with others and then took actions that could have potentially seriously injured innocent people reveal that he is in great need of specific deterrence. This Court now

has an opportunity to impose a sentence that will force the defendant to rehabilitate and be

deterred from committing crime.   The need to deter the defendant is quite high, as is partly

reflected in his conduct while incarcerated. Instead of beginning his rehabilitative path, the

defendant has been found with contraband, twice, and was involved in an assault with another

inmate.   The defendant has continued to commit offenses and has shown his lack of respect for

the law.   See PSR ¶ 10.   The government's requested sentence of 120 months' incarceration is

sufficient but not greater than necessary to meet that need.

> 5.    Need to Provide the Defendant with Educational or  Vocational Training, Medical
>       <u>Care, or other Correctional Treatment in the Most Effective Manner</u>

The defendant last attended school in the 9th Grade.   PSR ¶ 139.   He last held a job at

the age of 16 when he worked for one month at the Movie Studio Grill in Upper Darby,

Pennsylvania.   PSR ¶ 143.   The defendant reported that he earned money through gambling.

PSR ¶ 145.   The defendant would benefit from additional vocational training while incarcerated

and/or while on supervised release.   This would aid the defendant in reintegrating into society.

The recommended sentence will not inhibit from pursuing these goals and needs, if desired,

while in the custody of the Bureau of Prisons or following his eventual release.

> 6.    Need to Avoid Unwarranted Sentence Disparities Among Defendants with
>       <u>Similar Records who have been Found Guilty of Similar Conduct</u>

Sentencing consistency is extremely important in the overall administration of justice.

Any sentence imposed on defendant McBride should reflect consideration of the sentences

imposed upon similarly situated defendants.   Here, McBride is the second defendant in this case

to be sentenced however, as noted above, the recommended sentence is one year above the

applicable guidelines range but within the parties' agreed upon Rule 11(c)(1)(B) range.   There

are specific characteristics of this case that are not accounted for in the guideline range and on that basis the government moves for an upward variance of 12 months.

The guidelines provide that unwarranted sentencing disparities should be avoided.   Of note, co-defendant Nasser McFall, was previously sentenced in this case to a term of 78 months imprisonment.   ECF 139.   The Court calculated the guideline range for Mr. McFall at 70-87 months imprisonment based on an offense level of 27 and a CHC of I.   In addition to the difference in criminal history, Mr. McFall was charged and convicted of four incidents involving placing bombs in ATMs, in contrast to McBride's six.   But most importantly, McFall was the getaway driver for each of the incidents for which he was charged.   He never got out of the getaway vehicle or entered the victim business.   He remained outside of each victim business to watch for police activity and notify his co-conspirators if anything was amiss.   And in stark contrast to defendant McBride, Mr. McFall pled guilty to the Superseding Indictment on June 29, 2022, and received three levels off for acceptance of responsibility.   ECF 63.   Finally, unlike Thompson and McBride, McFall was not arrested in possession of a firearm.   Thus, while there is a sentencing difference between Mr. McFall and defendant McBride   it is warranted on the facts of each case, including their respective roles and actions, and differences in their criminal histories.

Finally, with regard to the guidelines, as noted above, had the robbery guidelines been used in this case, an additional two levels would be added because the object of the robbery was the property of a financial institution and two levels for the loss amount involved in the conduct. USSG 2B3.1(b)(1) and (b)(7).   While the arson guidelines are correctly applied, it bears noting these aggravating factors that the guidelines generally apply.   Here, each victim business of the

successful theft was a financial institution, Capital One Bank, PNC Bank, and Wells Fargo Bank, and the crimes committed were particularly lucrative.

7.  <u>Defendant's Objections to the PSR</u>

The defendant raised two objections to the guideline calculations set forth in the PSR. PSR pg. 35-36.   In an email dated July 2, 2024, the defendant stated that he would persist in a third objection that was not included in the PSR.   The government responds to each of the defendant's objections here.

The defendant objected to the inclusion of the Delaware incident because the defendant was not convicted of the substantive offense.   PSR pg. 35.   USSG § 1B1.2(d) provides that "A conviction on a count charging a conspiracy to commit more than one offense shall be treated as if the defendant had been convicted on a separate count of conspiracy for each offense that the defendant conspired to commit."   Application Note 3 further provides guidance to the exact scenario before this Court: "conviction on a conspiracy count charging conspiracy to commit more than one offense is treated as if the defendant had been convicted of a separate conspiracy count for each offense they conspired to commit."   See PSR pg. 35 (Response by U.S. Probation Officer).   Thus, so long as the defendant was found to have conspired to commit the Delaware robbery, the Probation Officer's guideline calculation is correct.   As charged in the Superseding Indictment    The defendant further argues that he did not admit guilt to the Delaware robbery as outlined in the conspiracy.   See PSR pg. 35, Objections by the Defendant.   This is belied by the record.[3]

During the factual basis for the plea, the government stated the following facts:

_____

[3]  The defendant obtained the transcript of the plea hearing in this case.   ECF 149.

On or about November 5, 2020, in Claymont, Delaware, Mr. McBride and Mr. Thompson entered the Ridge Road Wawa.   Mr. Thompson locked the door behind them, preventing the employees from leaving the store.   Mr. Thompson brandished a crowbar, corralled the store employees, forced them to sit on the floor, and demanded their cell phones.   The defendant approached the ATM, placed an explosive device into the machine, and lit.   The device detonated, damaging the ATM.   Defendant and Mr. Thompson were unable to gain access to the United States currency inside, and then fled the store, rejoining Mr. McFall in the getaway vehicle and fled the area.

Tr. COP Hearing Jan. 16, 2024 at 31.   When the Court then asked the defendant: "Do you agree what the government's lawyer told me is accurate as it relates to you?"   The defendant responded: "As far as myself, yes.   Yes, myself, yeah."   Tr. COP Hearing Jan. 16, 2024 at 34. Further, the plea agreement in this case provides that the defendant would plead guilty to Count One.   ECF 144.   And he further confirmed his participation in the Delaware offense during the factual basis for his plea in this case.   He is thus responsible for the overt act of the conspiracy, placing the bomb in the Wawa in Delaware in the hopes of accessing the cash inside of the ATM.   Accordingly, the government respectfully requests that this Court overrule the defendant's objection to the inclusion of the Delaware incident as a group (Group IV, PSR ¶ 54).

The defendant's second objection concerns the application of the guideline regarding the attempted destruction or the destruction of a place of public use as the term is defined in USSG § 2K1.4.   PSR ¶ 36.   Application Note 1 of USSG 2K1.4 cites to the definition of "place of public use" in 18 U.S.C. § 2332(f)(6) which states, among other things "any commercial, business. . . or similar place that is accessible or open to members of the public."   PSR ¶ 36, n. 6.   The Probation Officer included photographs of each location of the bombings and each photo clearly demonstrate that the victim business was "accessible or open to members of the public.   PSR pg. 36-39.   In addition, for the Delaware Wawa, the business was actually open to members of the

public.   Thus, the defendant's objection to the applicability of this guideline should be overruled as each of the ATMs are by definition, a place of public use.

Finally, the defendant objected to the application of the restraint guideline for the Delaware ATM bombing.   PSR pg. 39.   The Probation Officer applied the enhancement because the defendant's co-conspirator also entered the Wawa and then locked the door behind him to prevent the employees from leaving.   PSR ¶ 56; USSG § 3A1.3.   While McBride then went to attempt to access the cash in the ATM, his co-conspirator collected the cell phones of the store employees, made them sit on the floor, with a crowbar displayed in their face.   At the outset it bears noting, that not only does the physical restraint guideline apply, the abduction guideline would likely apply as well, which would result in a four-level increase in the offense level.   See USSG § 2B3.1(b)(4)(A); *United States v. Reynos*, 680 F. 3d 283, 286 (3d. Cir. 2012). Here, because the robbery guidelines are not used, only the restraint enhancement can be applied. Albeit a brief distance, the employees were forced to move from their original position, accompanied by a co-conspirator, because they did while the co-conspirators put a crowbar in their face they did not believe that they were at liberty to refuse, and the action was taken to further the crime, that is to prevent anyone from notifying the police or interrupting the destruction of the ATM.   *Reynos*, 680 F. 3d at 286-87.

The Third Circuit has twice clarified the applicability of the physical restraint guideline. First, in *United States v. Copenhaver*, the court determined that placing a victim inside of a fireplace and placing a fire screen across it constituted "physical restraint" under the USSG. 185 F. 3d 178, 182 (3d Cir. 1999).   Then in *United States v. Bell*, the Court adopted a five-part test that further delineated the factors district courts should consider when ruling on the

application of the enhancement.   947 F. 3d 49 (3d Cir. 2020).

First, the restraint must involve some physical aspect.   *Id*. at 57.   Physical restraint "requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way."   *Id*. at 56.   Here, the defendants locked the door to the Wawa, took the employees' phones, and prevented them from leaving the store with a crowbar pointed in their face.   Thus, they were confined in some way.   Second, the assailants must assert control over the victim.   *Id*. at 57.   Here, again by locking them into the store, taking their phones and demanding compliance, the assailants asserted control over the victims.   Third, the Court considers whether the victims were provided no alternative but compliance.   *Id*. at 57-58.   This factor is amply demonstrated on this record where the victims complied because a crowbar was stuck in their face, they were locked into the store, and they had already given their cell phones to their assailants.   Fourth, the court should look at whether they focused on the victim for some period of time.   *Id*. at 58.   Here, the court should look at whether there was more than a momentary restraint (as was present in Bell).   The "duration of the restraint [is] a factor in [the court's] analysis determining application of the enhancement.   *Id*. at 59.   Here, the duration was more than momentary compliance.   The victims complied for a period of time that allowed for McBride to break into the ATM, place the bomb inside of it, detonate it, and determine that they would not be able to quickly access the cash inside.   Finally, the court should consider whether the victims were placed in a confined space.   *Id*. at 60.   "No single factor is dispositive nor does any factor carry more weight than any other factor; rather, district courts should balance all of these factors.   *Id*.

This Court should apply the factors noted above and find that the enhancement applies.

First, the victims were restrained to a confined space at the point of a weapon.   Given that the assailants demanded their phones after locking them in the store, they had no choice but to comply.   As the events transpired they learned that their assailants were about to place a bomb inside of the ATM in the Wawa, the duration of the restraint was sufficient for the offense to be completed, it was not a momentary restraint.   Finally, as the holding of Bell makes clear, no one factor is determinative.   Here, where the factors are all present to a varying degree and the goal of the action taken by the co-conspirators, restraining the store employees such that the offense could be completed, meets with the purpose of the enhancement, it should be applied.

## VI.    **CONCLUSION**

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a sentence of 120 months' imprisonment and three years' of supervised release.   McBride's actions in this case, that included joining a conspiracy, at its inception, to place bombs inside of ATMs throughout the Philadelphia area and in Delaware to steal money, even when innocent employees were present inside of the victim locations, demonstrates that a significant sentence of incarceration is warranted.   While the first two explosive incidents exploited a period of rioting and "social unrest" to steal money from ATMs at a Target and Wawa, it is important to note that any such period had long subsided by the time of the Wells Fargo ATM explosion on December 5, 2020, and the Wells Fargo ATM explosion on March 2, 2021, both of which resulted in the successful taking of thousands and thousands of dollars.   Further, there was no social unrest whatsoever that was connected to the decision to enter an operating Wawa just after 5:00 a.m. in Claymont, Delaware, lock the employees inside, corral them on the floor, take their phones, and then place a bomb in the ATM in order to steal the money inside.   It is clear, therefore, that the

defendant and his codefendants, chose to take advantage of, and capitalize upon, a time of social

upheaval in the city of Philadelphia and commit violent crime for profit.   While much of the city

was engaged in large-scale social protests that diverted law enforcement attention, the defendants

used that opportunity to commit destructive crime for their own benefit.   Mr. McBride and

others used force to break into businesses and used explosive devices to steal money. After

realizing the lucrative nature of those opportunistic crimes, the defendant then continued those

efforts after the social unrest had subsided in continued a pre-planned and coordinated manner.

Whatever the motivations or spur of the moment decision that existed at the inception of the

conspiracy had long since passed by the time the last charged event, where greed and opportunity

motivated the defendant and his two co-conspirators to steal $161,380 from a Wells Fargo ATM

in Northwest Philadelphia.   There are a number of concerns to consider during sentencing, but

the government notes three final thoughts.   First, ATM explosions are highly prevalent in

Philadelphia and were highly prevalent during October of 2020.   There is a heightened need for

general deterrence in this case to put the public on notice that the actions the defendant and his

co-conspirators took in this case, to conspire to detonate bombs in ATMs on six occasions

between October of 2020 and March of 2021 will result in severe consequences.   Second, the

defendant presents a far different case than Mr. McFall and has earned himself a far different

sentence.   Third, as will be discussed in detail at the sentencing hearing in this case, the impact

upon the victims, the Wawa employees, and the victim businesses was profound.   All of these

factors weigh in favor of the government's requested sentence in this case, 120 months.

      For the reasons set forth above, the government respectfully requests that this Court vary

upward and impose a sentence of 120 months' incarceration, three years of supervised release,

and a $300 special assessment.    The government further requests that this Court order that the defendant pay restitution in the amount of $417,463, GPA ¶ 7, and that he be ordered to forfeit the same amount, See Govt. Mot. for a Preliminary Order of Forfeiture, ECF 155, GPA ¶ 10.a.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney


/s Robert E. Eckert
Robert E. Eckert
Assistant United States Attorney

David Osborne
Special Assistant United States Attorney

Dated: July 5, 2024

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that a true and correct copy of the government's sentencing memorandum has been served via electronic filing and electronic mail on this date on counsel for the defendant:

           Lawrence J. Bozzelli, Esq.


           <u>/s Robert E. Eckert          </u>
           Robert E. Eckert
           Assistant United States Attorney

Date: July 5, 2024